## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MARY HEATH, Individually, and on behalf of all others similarly situated,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 5:25-cv-00588** |
| **PRESTIGE CLAIMS SERVICE, LLC and ALLCAT CLAIMS SERVICE, LLC** | § § § § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I. Nature of the Action

1.     Plaintiff MARY HEATH (hereinafter, "Plaintiff") brings this action on behalf of herself and all others similarly situated against defendants PRESTIGE CLAIMS SERVICES, LLC and ALLCAT CLAIMS SERVICE, LLC, (collectively, "Defendants"). Plaintiff and Class Members worked for Defendants for over 40 hours a week but, because the Defendants misclassified them as independent contractors, they were not paid an overtime premium for any hours worked over 40 in a week. By misclassifying the Plaintiff and Class Members and failing to pay an overtime premium of at least one-and-one-half times their regular rate for hours worked over forty in a week, the Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201-219 ("FLSA"). Plaintiff brings this action under 29 U.S.C. § 216(b) to recover unpaid overtime wages, liquidated damages, and reasonable attorney's fees and costs.

2.     On behalf of herself and all other similarly situated employees, Plaintiff brings this action as a collective action under the FLSA. 29 U.S.C. § 216(b). The similarly situated employees who should be given notice and the opportunity to join the collective action are referred to herein as the "Class Members."

## II. <u>Jurisdiction & Venue</u>

3.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), because the action arises under the FLSA, a law of the United States.

4.    The Court has personal jurisdiction over the Defendants in this action because they are Texas companies, incorporated in Texas, and with principal places of business in Texas.

5.    Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in the San Antonio Division of the Western District of Texas.

## III. <u>Parties</u>

6.    MARY HEATH is an individual who resides in Suwanee, Georgia and who was employed by Defendants.

7.    PRESTIGE CLAIMS SERVICE, LLC (hereinafter, "Prestige Claims") is a Texas domestic limited liability company doing business in the State of Texas and may be served with process by serving its registered agent, CT Corporation System, at the registered office address, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

8.    ALLCAT CLAIMS SERVICE, LLC (hereinafter, "Allcat Claims") is a Texas domestic limited liability company doing business in the State of Texas and may be served with process by serving its registered agent, CT Corporation System, at the registered office address, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

9.    The Class Members are cat adjusters who worked for Prestige Claims and/or Allcat Claims at any time during the three-year period prior to the filing of this Complaint to the present. A class definition appears in Paragraph 67. These Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned *by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

### IV.  FLSA Coverage

10.     Each Defendant is and has at all material times been an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203.

11.     At all material times, Plaintiffs and the Class Members were employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 207.

12.     In the alternative, at all material times each Defendant employed at least two individuals engaged in interstate commerce and had an annual dollar volume of sales or business done of at least $500,000.00.

13.     At all material times, Plaintiffs and the Class Members were not exempt from overtime under the FLSA.

### V.  Joint Employers

14.     Defendants are joint employers of Plaintiff and the Class Members under the FLSA.

15.     Defendants, formally or as a matter of practice, jointly determine, share, or allocate the ability to direct, control, or supervise the Plaintiff and the Class Members, by both direct or indirect means.

16.     Defendants, formally or as a matter of practice, jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the Plaintiff and the Class Members, or modify the terms or conditions of the workers' employment.

17.     The relationship between Defendants is indefinite and longstanding.

### VI.  Plaintiff's and Class Members' Employment by Defendants

18.     Prestige Claims and Allcat Claims provide outsourced claim services to insurance companies. One kind of claim service the Defendants supply is third-party claims adjusting services when insurance companies need assistance adjusting the large volume of claims that follow natural disasters, such as hurricanes or floods. These kinds of claims are

known as "catastrophe" or "cat" claims, and adjusters who regularly adjust these kinds of claims are known as "cat adjusters." Defendants employ cat adjusters, like Plaintiff and the Class Members, to adjust cat claims filed by the insureds of the insurance companies that have hired the Defendants to provide cat adjusting services.

19.     Defendants paid Plaintiff and the Class Members a day rate. The Plaintiff and Class Members did not receive pay on a salary basis, a fee basis, or a commission basis, and no part of their pay was guaranteed to be paid regardless of the number of days worked. The Plaintiff and Class Members did not receive any additional pay for hours worked over 40 in a week. At the end of her employment, Plaintiff was briefly paid on an hourly basis.

20.     Plaintiff and the Class Members were labeled "independent contractors." Regardless of whether this label is proper in another context, as a matter of economic reality, Plaintiff and the Class Members were economically dependent on the Defendants and were not in business for themselves. Therefore, the Plaintiff and the Class Members were "employees" of the Defendants for purposes of the FLSA, including its overtime requirement. *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) ("To determine if a worker qualifies as an employee, we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself.")

21.     Defendants controlled the meaningful aspects of the business model such that Plaintiff and the Class Members cannot plausibly be considered separate economic entities.

22.     Plaintiffs and Class Members could not negotiate with the insurance companies for higher pay or to handle fewer claims. Nor could Plaintiff and Class Members seek out better paying insurance companies to adjust claims for. Plaintiff and the Class Members worked on the claims provided to them by the insurance company the Defendants contracted with and were paid at a rate set by the Defendants.

23.     The Plaintiff and Class Members had no authority to accept or decline work from Defendants' insurance company clients. The Plaintiff and Class Members did not independently choose assignments, instead they worked on whatever claims they were assigned.

24.     The Plaintiff and Class Members had no ability or opportunity to engage in efforts to expand the business or secure more work, such as advertising or marketing.

25.     Nor could the Plaintiff and Class Members hire their own adjusters or assistants to handle claims assigned to them.

26.     The Defendants' relative investment, compared to that of the Plaintiff or each individual Class Member, greatly exceeded any investment by that individual in the business.

27.     The Defendants supplied the specialized computer software which was critical for the work, and without which the work could not be done.

28.     The Defendants alone incurred the costs of marketing their claims adjusting services to insurance companies, without which no Plaintiff or Class Member would have work to perform. Plaintiff and Class Members had no role in marketing to insurance companies and thus could not increase the number of clients of the business, extend the market reach of the business, or increase sales.

29.     The Defendants incurred other costs, such as administrative overhead, paying managers who supervised the Plaintiff and Class Members, maintenance of an office/headquarters, pay for executives, and other similar costs.

30.     The Plaintiff and Class Members investments were limited to generic office items such as a computer on which to load the specialized software, or a headset to make speaking on the phone easier.

31.    Plaintiff and Class Members were not exposed to a risk of loss in the business. They were paid a day rate and had no equity in the business and received no profits above and beyond their day rate.

32.    The Defendants controlled the hiring and firing of Plaintiff and Class Members, as well as their co-workers.

33.    The Defendants controlled the pricing of their services to insurance companies. Defendants also controlled the rate paid to Plaintiff and Class Members.

34.    The Defendants supervised the work of Plaintiff and the Class Members, including monitoring them through technological means.

35.    The Defendants employed staff managers who had the authority to override any decision made by the Plaintiff and Class Members in adjusting a claim.

36.    The Defendants also set the schedule for the Plaintiff and Class Members, determining what days they would be required to work. Often this was seven days per week for several weeks at a time.

37.    Plaintiff and Class Members had to request a day off from a manager if they wanted to not work on a scheduled day. Plaintiff and Class Members understood that requesting days off could result in their "contract being canceled," i.e., they could be fired. As claims ebbed, management would determine when and on what days the Plaintiffs and Class Members would have a day off, which would be communicated to them via email or video call.

38.    The Plaintiff's and Class Members' work did not require the kind of specialized skill to perform that is indicative of contractor status. Moreover, to the extent Plaintiff and Class Members were skilled, they had no chance to that use that skill in connection with business initiative to grow a business or increase their pay.

39.    Plaintiff and Class Members had no practical way to increase their earnings.

40.    During the time the Plaintiff and Class members worked for the Defendants, they were not permitted to work for another employer. Moreover, as a practical matter, they could not work for another employer given the Defendants' schedule of working seven days a week for long stretches. While they were hired to handle claims from specific events, the length of service for each such hiring was measured in months, not weeks or days.

41.    Because cat adjusting typically follows major storms, it is seasonal in nature. Indeed, the Defendants would email Plaintiff and other Class Members after storms to advise them of any specifics that would be required for them to be hired to work on that storm in the upcoming season. For example, after a storm in Texas, the Defendants emailed Plaintiff (and others cat adjusters) to make sure they had a certification from TWIA so they could work on that storm.

42.    Here, the Plaintiff worked for the Defendants for two seasonal periods in consecutive years, with each period lasting over five months. She was first employed by Defendants as a cat adjuster from on or around August 29, 2023 to on or about February 2, 2024, and then, from on or about September 25, 2024 to on or about February 28, 2025. In sum, Plaintiff worked for Defendants over ten months in two years' time.

43.    Cat adjusters like Plaintiff and Class Members are integral to the Defendants' business. Without cat adjusters, the Defendant could not provide the services it sells in the marketplace.

44.    Plaintiff and the Class Members were, as a matter of economic reality, employees of Defendants.

45.    Plaintiff and the Class Members regularly worked in excess of 40 hours per week.

46.    Defendants knew or reasonably should have known that Plaintiff and the Class Members worked in excess of 40 hours per week.

## VII. <u>Count One: Failure to Pay Overtime Wages in Violation of 29 U.S.C. § 207(a)</u>
### (On Behalf of Plaintiff and the Class Members)

47.     Plaintiff adopts by reference all the allegations set forth above.

48.     At all relevant times, each Defendant has been and continues to be an "employer" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed employees, including Plaintiffs and the Class Members, as defined by the FLSA.

49.     The FLSA provides that employers must pay their employees at a rate no less than time-and-a-half times their regular rate for all hours worked more than 40 hours per workweek. 29 U.S.C. § 207(a).

50.     The Plaintiffs and Class Members are employees entitled to overtime wages for all hours worked in excess of 40 per workweek at the rate of one-and-a-half times their regular rate of pay.

51.     Defendants did not pay Plaintiff or the Class Members overtime as required by 29 U.S.C. § 207(a)(1) for the hours he worked in excess of forty per week.

52.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one-and-a-half times the regular rate at which its employees are paid are applicable to Defendants, Plaintiffs, or the Class Members.

53.     Pursuant to 29 U.S.C. § 216(b), the Plaintiffs and the Class Members are entitled to recover their unpaid wages and liquidated damages in an equal amount.

54.     The Plaintiffs and Class Members are also entitled to recover their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

55.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

56.     Defendants' conduct was the result of reckless disregard for the FLSA.

## VIII. <u>Collective Action</u>

57.    Plaintiff adopts and incorporate by reference the allegations in the preceding paragraphs.

58.    Plaintiff has actual knowledge that the Class Members also were paid on a day rate basis and were denied overtime pay for such time. Plaintiff worked with and communicated with other cat adjusters paid on a day rate and has personal knowledge that the policies described in this lawsuit harmed other workers.

59    Although Defendants permitted and/or required the Class Members to work more than 40 hours per week, it denied them full compensation for their overtime hours.

60.    The Class Members are not exempt from receiving overtime pay.

61.    Plaintiff is similarly situated to the Class Members in that they, too, were classified as independent contractors and denied overtime pay.

62.    Defendant's failure to pay overtime compensation at the rates required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of any potential Plaintiff.

63.    The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment; all Class Members, irrespective of their particular job requirements, are entitled to overtime compensation at the rate of time-and-a-half for hours worked in excess of 40 during a workweek.

64.    Although the exact amounts of damages may vary among the Class Members, the damages can be easily calculated by a simple formula. The claims of all Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all Class Members.

65.    The similarly situated Class Members are known to Defendants, are readily identifiable, and can be located through Defendants' records. They should be notified and

allowed to opt into this action pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages and/or prejudgment interest, and attorneys' fees and costs.

66.     As such, the FLSA Class is properly defined as follows:

**All current and former cat adjusters of Defendants who were classified as independent contractors and did not receive overtime pay at any time during the three-year period prior to the filing of this lawsuit to the present.**

## VIII. <u>Prayer</u>

67.     Plaintiff and the Class Members pray for the following relief:

a.      judgment awarding all unpaid overtime compensation, liquidated damages, attorneys' fees and costs;

b.      prejudgment interest at the applicable rate;

c.      postjudgment interest at the applicable rate; and

d.      all such other and further relief to which they may show themselves to be entitled at law or in equity.

Respectfully submitted,

**WYLY & COOK, PLLC**

By:   /s/ *Kelly E. Cook*
          Kelly E. Cook
          kcook@wylycooklaw.com
          State Bar No. 24062675
          Warren A. Berlanga
          wberlanga@wylycooklaw.com
          State Bar No. 24085199
          1415 North Loop West, Suite 1000
          Houston, TX 77008
          Telephone: (713) 236-8330
          Facsimile: (713) 863-8502
          **Counsel for Plaintiff**